UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

DARRYL GLOVER,

Plaintiff,

v.

9:26-CV-1314
(AMN/MJK)

LISA ANDERSON, Deputy Superintendent for Security,
Eastern NY Correctional Facility, et al.,

Defendants.

---

APPEARANCES:

DARRYL GLOVER
Plaintiff, pro se
22-B-2531
Eastern NY Correctional Facility
Box 338
Napanoch, New York 12458

ANNE M. NARDACCI
United States District Judge

**DECISION and ORDER**

## I. INTRODUCTION

Plaintiff Darryl Glover commenced this action by filing a pro se civil rights complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with the statutory filing fee. Dkt. No. 1, Complaint ("Compl."); Dkt. Entry for Compl. dated 06/30/26 (memorializing the receipt information from the filing fee transaction).

## II. SUFFICIENCY OF THE COMPLAINT

### A. Governing Legal Standard

Pursuant to 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

### B. Summary of the Complaint

The complaint asserts allegations of wrongdoing that occurred while plaintiff was incarcerated at Eastern NY Correctional Facility ("Eastern"), as a convicted prisoner. *See generally* Compl. The complaint names as defendants (1) Deputy Superintendent for Security at Eastern, Lisa Anderson; (2) Eastern Sergeant, Kevin Darling; (3) Eastern Lieutenant, Jeremy Osterhoudt; and (4) Eastern Correction Officers Brian McCarthy, Brian Fries, III, Michael Schmidt, and Kevin Stauch. Compl. at 1-2. The following facts are set forth as alleged by plaintiff in his complaint.

#### 1. Cell Search and Confiscation of Pendant

On May 14, 2025, defendant Sergeant Darling and defendant Correction Officers McCarthy, Fries and Schmidt performed a search of plaintiff's cell. Compl. at 3. "Plaintiff was

secured with mechanical restraints and removed from his cell during the search." *Id.* Darling informed plaintiff that the "security officials were searching for a cell phone[; however, n]o cell phone was found or recovered during the search." *Id.*

Instead, "Darling ordered the confiscation of [p]laintiff's religious chain and pendant." Compl. at 3. "Plaintiff is a registered Rastafarian," and the confiscated "pendant depicts a lion-head, [which is] a symbol representing the Rastafarian faith." *Id.* Plaintiff asked what "the basis [was] for confiscating his chain and pendant[, and] . . . Darling stated he was acting pursuant to orders from defendant [Deputy Superintendent] Andersen to confiscate the property as contraband." *Id.* "Darling did not provide [p]laintiff with any written directive or memorandum from [d]efendant Anderson authorizing the confiscation," instead Darling merely "asserted . . . [p]laintiff lacked authorization to possess the chain and pendant," despite plaintiff "show[ing] permits and institutional documentation indicating he was authorized to possess the chain and pendant." *Id.*

Plaintiff asserts that, consistent with New York State Department of Corrections and Community Supervision ("DOCCS") directive No. 4202, "any question regarding the validity of religious items must be referred to the facility chaplain prior to confiscation[ and p]laintiff is not aware of any chaplain consultation occurring before the confiscation of his chain and pendant." Compl. at 4.

"Plaintiff complained to [d]efendant [Lieutenant] Osterhoudt[,the supervising security official present during the search,] about the confiscation and presented his permits and directives for review." Compl. at 4. Plaintiff contends that "Osterhoudt appeared prepared to return the chain and pendant to [p]laintiff," however, "[b]efore the items were returned, . . . Darling stopped . . . Osterhoudt and questioned his actions[ and] Darling [ultimately] retained

the property, stating it would be sent to the package room for administrative review [since] . . . Andersen had ordered confiscation." *Id.* "Osterhoudt did not indicate knowledge of any prior directive from . . . Anderson concerning the confiscation." *Id.*

Plaintiff again asked why his property was being confiscated if the search was intended to find a cell phone and "Darling instructed [p]laintiff not to interfere with security operations and warned that interference could lead to disciplinary action." Compl. at 5. Darling left with the chain which was never returned to plaintiff. *Id.*

**2. Subsequent Retaliation**

The following day, plaintiff's cell was searched again. Compl. at 5. "Plaintiff requested to speak with a supervisor regarding the repeated searches and [pendant] confiscation." *Id.* "Plaintiff made repeated verbal complaints concerning the confiscation and cell searches," and eventually "filed a complaint with [the Office of Special Investigations ("OSI").]" *Id.* As of the date the pleading was written, "OSI ha[d] yet to respond or initiate an investigation." *Id.*

"On May 18, 2025, [p]laintiff submitted a formal grievance, filed as ECF-276-25." Compl. at 5. Concurrent with the grievance proceedings, plaintiff continued to inquire about his property and, eventually "[o]n June 6, 2025, [p]laintiff spoke with . . . Darling," who "informed [p]laintiff that an investigation had concluded and that the property would likely not be returned." *Id.*

"On June 7, 2025, [p]laintiff received a misbehavior report authored by . . . Darling, alleging [p]laintiff participated in efforts to introduce contraband." Compl. at 5. Plaintiff asserts that the misbehavior report was false, as it "alleged [p]laintiff did not possess legitimate permits and either exchanged the chain with another inmate or obtained it from an outside source," without ever providing plaintiff with "evidence supporting th[o]se allegations

during the disciplinary or grievance process." *Id.* at 6. Plaintiff indicates that "Darling assigned himself to investigate the allegations against [p]laintiff." *Id.* "The misbehavior report was dismissed as untimely, and no hearing was held on the disciplinary charges." *Id.* Had a hearing been held, "[p]laintiff would have sought witness testimony from Defendant Andersen," since "Darling claim[ed] to have been ordered by Defendant Anderson to confiscate [p]laintiff's property[.]" *Id.*

**3. Loss of Property**

"On July 3, 2025, [p]laintiff was informed by package room staff that he could mail [his pendant] home or dispose of it at the facility." Compl. at 8. "Staff stated that . . . Darling ordered disposal if [p]laintiff did not mail the property [home, so p]laintiff mailed the chain and pendant to a loved one." *Id.* However, "[t]he package did not reach its intended recipient." *Id.* An unnamed officer "searched the disciplinary office, the evidence locker, and logbooks but was unable to locate the chain and pendant." *Id.* "Defendant Stauch, present during th[e cell] search, stated he knew the location of the property," because "he was the individual who originally secured [it]" and that the property "would remain where it was until ordered otherwise by . . . Darling." Compl. at 8.

Plaintiff requested that his loved ones send him a new chain and pendant, which "[t]racking records confirm the package arrived at [Eastern] on December 26, 2025, with the signature of . . . a DOCCS employee." Compl. at 9. Plaintiff did not receive the property until January 16, 2026. *Id.* "Plaintiff received local permits indicating authorization to possess the new chain and pendant identical to the original items." *Id.*

Plaintiff argues he is entitled to relief because (1) his First Amendment rights to Free Exercise were violated by the confiscation of his pendant, Compl. at 9-10; (2) his Fourteenth

Amendment Due Process rights were violated by the deprivation of his personal property, *id.* at 10-11; and (3) a retaliatory false misbehavior report was issued against plaintiff for filing a grievance and OSI complaint, *id.* at 11. Plaintiff seeks monetary damages. *Id.* at 13.

**C. Analysis**

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

**1. First Amendment Free Exercise Claims**

The First Amendment to the United States Constitution guarantees the right to free

exercise of religion. *See* U.S. Const. amend. I; *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). As is true with regard to the First Amendment generally, the free exercise clause applies to prison inmates, subject to appropriate limiting factors. *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (holding that "[p]risoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause" (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).

"[A]n inmate does not need to establish a substantial burden in order to prevail on a free exercise claim under § 1983." *Kravitz v. Purcell*, 87 F.4th 111, 125 (2d Cir. 2023). "In the prison context, however, 'the right to free exercise of religion' is balanced against 'the interests of prison officials charged with complex duties arising from administration of the penal system.'" *Kravitz*, 87 F.4th at 127-28 (quoting *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)). Thus, "an infringement of the free exercise of religion [may be] permissible . . . if it is 'reasonably related to legitimate penological interests.'" *Id*. (quoting *Benjamin*, 905 F.2d at 574).

"[T]o assess a free exercise claim, a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers legitimate penological objectives." *Kravitz*, 87 F.4th at 128 (alterations adopted) (quoting *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988)).

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's First Amendment Free Exercise claims against all named defendants survive sua sponte review and require a response. In so

ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

**2. First Amendment Retaliation Claims**

Courts must approach claims of retaliation "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Davis*, 320 F.3d at 352 (quoting *Dawes*, 239 F.3d at 492). "To be an 'adverse action,' retaliatory conduct must be the type that would deter 'a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Hayes v. Dahlke*, 976 F.3d 259, 274 (2d Cir. 2020) (quoting *Davis*, 320 F.3d at 353)).

"[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's First Amendment retaliation claims against defendant Darling survives sua sponte review and require a response. In so ruling, the Court

expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 3. Property Deprivation

The Supreme Court has held that even the unauthorized intentional destruction of a prisoner's property may not be the basis for constitutional claims if sufficient post-deprivation remedies are available to address the claim. *Hudson v. Palmer*, 468 U.S. 517, 531 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)); *see also Rivera-Powell v. New York City Board of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) ("When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post deprivation remedy."). "New York in fact affords an adequate post-deprivation remedy in the form of, inter alia, a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001); *Davis v. New York*, 311 Fed. App'x 397, 400 (2d Cir. 2009) ("The existence of this adequate post-deprivation state remedy would thus preclude [plaintiff's] due process claim under § 1983 [for lost personal property]."). Moreover, the complaint is devoid of any allegations which plausibly suggest that adequate post-deprivation remedies to pursue expenses associated with the lost or destroyed property are unavailable to plaintiff.

Accordingly, plaintiff's Fourteenth Amendment due process claim based on the loss or destruction of personal property is dismissed without prejudice pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## III. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's (1) First Amendment Free Exercise claim against all named defendants and (2) First Amendment retaliation claim against defendant Darling **SURVIVE** sua sponte review and require a response; and it is further

**ORDERED** that plaintiff's remaining Section 1983 claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted;[1] and it is further

**ORDERED** that if plaintiff wishes to proceed with his claim in this action, he must provide the Court with seven copies of his complaint for service and do one the following within thirty (30) days: (1) pay the service fee due to the U.S. Marshal in full ($8.00 per defendant) by money order or certified check[2]; or (2) return a properly completed IFP application and inmate authorization form. Upon the expiration of this deadline or receipt of either payment for service or IFP materials, whichever happens first, the Clerk shall return this matter to the Court for further review; and it is further

**ORDERED** that the Clerk shall forward a copy of the summons and complaint by electronic mail to the New York State Attorney General's Office, together with a copy of this Decision and Order; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must

---

[1] Should plaintiff seek to pursue any of the claims dismissed without prejudice, he must file an amended complaint. Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue, and over which jurisdiction may properly be exercised. Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure. Plaintiff's deadline to amend his pleading as a matter of course is set forth in Rule 15(a) of the Federal Rules of Civil Procedure.

[2] There are seven defendants in the instant action, so at $8.00 per defendant, plaintiff would owe a total service fee of $56.00.

comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court. **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in plaintiff's address; his failure to do so may result in the dismissal of this action**; and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff, along with a blank IFP application and inmate authorization form.

**IT IS SO ORDERED.**

Dated: November 6, 2026
Albany, NY

Anne M. Nardacci
U.S. District Judge